

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| Tim Lors, acting in his own capacity<br><br>*Plaintiff*<br><br>v.<br><br>Jim Dean, acting in his official and individual capacities<br>Deb Dufour, acting in her official and individual capacities<br>Otto Doll, acting in his official and individual capacities<br>Kim Stahl, acting in her official and individual capacities<br>The State of South Dakota,<br>Larry Long – Attorney General<br><br>*Defendants* | CIVIL CASE NO: 07-3017<br><br>Verified Complaint |

## INTRODUCTION

1. This action arises from unlawful discrimination by Defendants Jim Dean, Deb Dufour, Otto Doll, Kim Stahl, the State of South Dakota on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, (29 U.S.C. § 794) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.; 12201 et seq.) and 28 C.F.R. Part 35.

2. On August 9, 2005, the plaintiff submitted a properly executed U.S. Equal Employment Opportunity Commission Charge of Discrimination through the Department of Human Rights, but the State of South Dakota failed to file it with the EEOC. On October 28, 2005 the plaintiff submitted the EEOC charge again, and it was assigned case number: 32J-2006-00018. On January 30, 2007, the EEOC issued the Plaintiff a Notice of Dismissal and Right to Sue.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over all claims in the Complaint, including claims arising under the United States Constitution and 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(1),(a)(2),(a)(3) and (a)(4), which confer original jurisdiction on United States District Courts in suits to redress the deprivation of rights, privileges and immunities, as stated herein. The Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

4. Plaintiff Tim Lors is a Career Service employee of the Bureau of Information Technology (BIT), State of South Dakota. Tim has worked within the LAN Support Services division for over a decade. Tim had been assigned the duties of a Computer Support Team Leader for over five years.

5. Tim was diagnosed with Type 1 diabetes nearly 30 years ago, at age 25. Type 1 diabetes develops when the body's immune system destroys pancreatic beta cells. Persons with Type 1

diabetes produce little or no insulin and therefore must use subcutaneous insulin injections to control their condition. There is no cure for diabetes, although it can be managed through intensive daily maintenance.

6. Tim's impairment substantially limits one or more major life activities. Tim is a qualified individual with a disability pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

7. Defendant Jim Dean is the plaintiff's immediate supervisor in LAN Support Services.

8. Defendant Deb Dufour is Jim Dean's immediate supervisor in LAN Support Services.

9. Defendant Otto Doll is the Bureau of Information Technology (BIT) Commissioner, and is responsible for the LAN Support Services division within BIT.

10. Defendant Kim Stahl is the Human Resources officer in the Bureau of Personal (BOP) that advises the Plaintiff's supervisors on job actions.

11. The State of South Dakota is the plaintiff's employer.

## STATEMENT OF FACTS

12. On November 9, 2004, the plaintiff was demoted from Computer Support Team Leader to Computer Support Analyst. His position was filled by a state employee without a disability who competed for the position and was promoted. This demotion changed the plaintiff's job duties from tasks that were inherently compatible with good diabetes management to duties that substantially inhibit diabetes management. Furthermore, the new job duties involve tasks that a

person with advancing diabetes becomes unable to perform, whereas the former job duties can be readily performed by a diabetic until their complications reach end stage.

13. The pretext for this demotion was that the change in job duties was a "lateral transfer" allegedly carried out because the plaintiff had "difficulty getting along with others." The defendants intentionally used the term "lateral transfer" as a mechanism to short circuit State Government's appeal process as demanded by the plaintiff, even though the job action cannot be construed as anything other than a "demotion" as defined by South Dakota Administrative Rules.

14. The demotion was a sham – the remedy for 'not getting along with others' was to place the plaintiff in a position that resulted in greater contact with others.

15. The defendants did not demote another team leader whose problems escalated to the level of a fist fight, demonstrating that the issue of 'getting along' is not normally of particular concern.

16. In the plaintiff's numerous annual performance reviews, he never received a *'list of areas to work on'* until after he complained that a revised sick leave policy violated both HIPAA and ADA. Furthermore, negative comments *(improve your working relationships)* in the list of things to work on directly conflicted with positive comments *(you are pleasant and cooperative to work with)* in the teamwork section of the same 2004 performance review. Four months following that annual review, and without being advised that any item in "the list" had been transgressed, the plaintiff was demoted.

17. In addition to other actions of hostility, the defendants deliberately, intentionally, wantonly, and willfully exercised the outrageous discriminatory action of requiring the plaintiff to do demanding physical labor at the women's prison. This resulted in frequent insulin reactions that were especially difficult to treat, and, in the event of a prison lockdown, had the potential to be life threatening. Insulin reactions were extremely rare and easily treatable prior to the demotion.

18. After months of requiring hard labor at the women's prison, the defendants relented and now only require the plaintiff to work at nearby facilities. However, the defendants still insist that the plaintiff perform irregular physical tasks, despite being informed that a predictable schedule is paramount to good diabetes management. Furthermore, even though the defendants have told the plaintiff that he is permitted to adjust his work schedule as required, the plaintiff has been soundly chastised for postponing physical work a few minutes in order to treat a low blood sugar.

19. The plaintiff requested job assignments that have predictable levels of physical exertion, such as working on the clone development team, maintaining Computer Support files, developing software installation standards, and performing application testing. However, the defendants have intentionally discriminated against the plaintiff by assigning these tasks to others, rather than granting these reasonable accommodations.

21. The plaintiff, the plaintiff's doctor, and the State's Health Insurer's Diabetes Program Manager have all noticed and expressed alarm over the increase in the plaintiff's HbA1C levels, a blood test that is a marker for diabetic complications. The threat of renal failure, blindness, heart attack, and amputations increases exponentially as this value climbs above 7%. The plaintiff historically had levels in the 7% range for years prior to the demotion, but has consistently presented levels well over 8% after the demotion.

22. Two endocrinologist specialists have recently examined the plaintiff and both have concluded his poor diabetes management is driven by unpredictable physical exertion levels at work.

23. The landmark DCCT and EDIC studies have proven that diabetic complications are directly related to lifetime blood sugar values. Specifically, diabetic complications are triggered by the accumulated product of the magnitude and duration that HbA1C values exceed 7%.

24. Because recent technologies for managing blood sugar values didn't exist years ago, the plaintiff is in a precarious position due to the limited medical strategies commonly practiced during his first decade of diabetes. Consequently, he will die from accelerated diabetic complications, assuming he does not fall victim to some unexpected tragedy. Already, a third of type 1 diabetics his age are dead.

25. As a direct result of the defendant's actions, the plaintiff has suffered and is continuing to suffer, irreparable harm due to the deliberate, intentional, wanton, willful, and outrageous discriminatory actions of the defendant. Also as a direct result of the defendant's actions, the plaintiff has suffered embarrassment, humiliation, emotional distress, career curtailment, and other injuries, and has incurred actual damages in an undetermined amount

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court grant the following relief:

A. Reinstatement of the Plaintiff to his former Computer Support Team Leader position by rescinding the demotion and striking related entries from his personnel file.

B. Preliminarily and permanent injunctions preventing the Defendants from further depriving the Plaintiff his constitutional rights by withdrawing reasonable accommodations in the workplace without first demonstrating an authentic business reason for doing so, using a process such as the appeal process mandated by the South Dakota Administrative Rules;

C. Declare that the practices, actions, and omissions of the Defendants discriminate against persons with disabilities and deny them the full and equal access that federal law requires;

D. Award the Plaintiff damages in an amount to be proven at trial;

E. Award the Plaintiff his reasonable attorneys' fees and costs arising out of this litigation;

F. Grant such other or additional relief as this Court may deem just and proper.

| Date: 4-27-2007 | _Jim Yost_ |
| --- | --- |
| | (Signature of Plaintiff) |

I swear or affirm under penalty of perjury that the information contained in this Verified Complaint is true and correct.

___Jim Yost___
Plaintiff

Subscribed and affirmed, or sworn to before me in the County of Hughes, State of South Dakota, this 27th day of April, 2007.

My Commission Expires: July 29th, 2009

_____
Notary Public/Deputy Clerk