

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| TIM LORS, acting in his official capacity, (sic) | CIV. 07-3017 |
| Plaintiff, | |
| -vs- | MEMORANDUM OPINION AND ORDER |
| JIM DEAN, acting in his official and individual capacities; DEB DUFOUR, acting in her official and individual capacities; OTTO DOLL, acting in his official and individual capacities; KIM STAHL, acting in her official and individual capacities; THE STATE OF SOUTH DAKOTA; and LARRY LONG, Attorney General, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

Plaintiff filed this action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the provisions of Sections 501 through 504 and 510 of the Americans with Disabilities Act of 1990, 42 U.S.C. 1201 *et seq.*, 12201 *et seq.*, and 28 C.F.R. Part 35, alleging that the defendants engaged in a course of conduct towards him constituting discrimination based on the plaintiff's disability.

Defendants filed a motion for summary judgment and a motion to dismiss (Doc. 43), claiming: 1) that plaintiff is barred as a matter of law from bringing a claim for money damages under the Americans with Disabilities Act against the State of South Dakota; 2) the suit against defendants in their official capacities should be dismissed because the claims against the employees merge with the claim against the employer and neither the ADA nor the Rehabilitation Act allow for employee liability in their individual capacities; and 3) all of plaintiff's claims present no genuine issues of material fact.

Plaintiff has filed a motion for a preliminary injunction to reinstate him to his former team leader position (Doc. 59) and a motion to exclude certain witnesses from testifying at the trial (Doc. 60). All motions are addressed in this opinion.

## SUMMARY JUDGMENT CONSIDERATIONS

The summary judgment standard is well known. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Systems, Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (internal citations omitted). The party opposing summary judgment must respond to the moving party's statement of facts "with a separately numbered response and appropriate citations to the record." D.S.D. LR 56.1(B). "In order to establish a genuine issue of material fact," the non-moving party, the plaintiff here, can "not 'simply rest upon the pleadings'" nor can "he rely on conclusory statements in his affidavit." Jeseritz v. Potter, 282 F.3d 542, 545 (8th Cir. 2002) (quoting Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1164 (8th Cir.1998)). Unsupported self-serving allegations are insufficient to establish a genuine issue of material fact. Smith v. International Paper Co., 523 F.3d 845, 848 (8th Cir. 2008). Rather, plaintiff must "point to evidence in the record sufficient to raise a genuine issue for trial." Jeseritz v. Potter, 282 F.3dd at 546 (quoting Mathews, 143 F3d at 1164).

In considering the motion for summary judgment, this court must view the facts in the light most favorable to the nonmoving party and give the nonmoving party (here, the plaintiff) the benefit of all reasonable inferences that can be drawn from the facts. Donaho v. FMC Corporation, 74 F.3d 894, 897-898 (8th Cir. 1996). The court will follow that directive.

We know also, as previously at least suggested, that summary judgments should seldom be granted in discrimination cases, cases where inferences are often the basis of the claim, and "summary judgment should not be granted unless the evidence could not support any reasonable inference" of discrimination. Lynn v. Deaconess Med. Ctr.-West Campus, 160 F.3d 484, 486-87 (8th Cir. 1998). *See also* Gill v. Reorganized School Dist. R-6, Festus, Mo., 32 F.3d 376, 377 (8th Cir. 1994) ("apply the standard with caution").

## FACTS

Plaintiff is a 56-year old man who has suffered from Type 1 diabetes most of his adult life. The management of Type 1 diabetes requires, among other things, periodic insulin injections in order to maintain a proper blood sugar balance. Failure to do so can result in a range of complications from altered mental states to organ damage to death.

At all times relevant to this action, plaintiff has been an employee of the State of South Dakota Bureau of Information and Telecommunications ("BIT"). The BIT provides a variety of technical support services regarding computers to various agencies of State government. The BIT generally provides computer support services through the use of "teams," which generally consist of six or more BIT employees - computer technicians - one of whom has the additional title of team leader. The team leader is responsible for overseeing his or her team and makes sure that each team member is responding to his or her fair share of support requests.

Prior to November 2004, plaintiff was employed as a computer support team leader. Plaintiff's immediate supervisor was computer support supervisor Jim Dean ("Dean"). Support services manager Deb Dufour ("Dufour") was Dean's direct supervisor, and Otto Doll ("Doll") was the acting Commissioner of BIT with supervisory authority over all BIT employees. Kim Stahl ("Stahl") is a human resources manager with the South Dakota Department of Personnel. Stahl is not an employee of BIT and did not and does not have authority regarding employment hiring, transfers, or termination actions.

On October 29, 2004, Dean wrote a letter to plaintiff, stating that effective November 9, 2004, plaintiff would be removed from the position of computer support team leader and placed in the position of computer support analyst. Dean's October 29 letter stated, *inter alia*, that the reason for removing the plaintiff as a team leader was because he "continue[d] to have difficulty

getting along with others . . . [and Dean] continue[d] to get complaints about [plaintiff's] inability to be a team player." At the time of plaintiff's change from team leader to support analyst, Dean and Dufour were both aware that plaintiff suffered from diabetes. The change in position did not result in any reduction in plaintiff's pay, pay grade, or benefits.

Plaintiff's first assignment following his removal as a team leader was to provide computer support services at the South Dakota Women's Prison ("SDWP") in Pierre, South Dakota. On January 25, 2005, less than three months after beginning work at the SDWP, plaintiff expressed concern to Dean about developing difficulty in managing his diabetes while working at the SDWP due to the unpredictable nature of the physical demands required of plaintiff while working at the SDWP. Plaintiff also expressed concerns that he might be inside the secure perimeter of the SDWP during a "lockdown" during which time he would not have access to insulin or his other methods for dealing with his diabetes.

As a result of plaintiff's concerns for adequate diabetes management while working at the SDWP, Dean wrote a letter to plaintiff on February 2, 2005, notifying him that he would be reassigned to the Becker-Hansen building effective February 7, 2005. In this letter, Dean told plaintiff that the reason for the reassignment was to eliminate the need for plaintiff to drive in order to respond to work orders and to eliminate the level of physical activity that was required at the SDWP.

Since being removed as team leader, plaintiff's work day is generally as follows: plaintiff arrives at his desk a few minutes before his scheduled start time of 8:00 a.m. and logs onto his computer. If no projects or work orders for his area come in during the course of the day, he generally stays at his desk and programs items for the PC Tool application that he maintains or he may write codes for other utilities used by BIT. If a work order comes in and plaintiff works on it, it generally requires that he leave his desk and go to the job site, which is generally in another area of the Becker-Hansen building but can, on occasion, involve the plaintiff going to another building. During the day, plaintiff usually takes breaks at 10:00 a.m. and 3:00 p.m. at which times, he generally goes for a walk. Plaintiff also leaves his desk for one hour at lunch time and ends his workday at 5:00 p.m.

Letters from Dean dated February 18, 2005, and August 2, 2005, both state that "unless there is an emergency, [plaintiff] can decide what to do when" with respect to plaintiff completing his work in a way that would not substantially interfere with his diabetes management. The letters also stated that, in the event of a work emergency, plaintiff could ask to have the work assigned to another analyst so that plaintiff could ensure that his blood sugar levels were within acceptable physiological limits prior to continuing to work.

Plaintiff claims that he can better manage his diabetes if he is employed in the capacity of a team leader and has requested that he be returned to that role. However, Dean and Dufour have denied plaintiff's request and maintain that plaintiff was removed from the role of team leader solely due to complaints about plaintiff's inability to work well with others.

## DECISION

In order for plaintiff to establish a prima facie case, plaintiff must show "that he was disabled within the meaning of the ADA, that he was qualified to perform the essential functions of his job, and that he suffered an adverse employment action because of his disability." Kosmicki v. Burlington Northern & Santa Fe R. Co., 545 F.3d 649, 651 (8th Cir. 2008), (citing Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir.2005)).

To meet the first "prong" in establishing a prima facie case, namely that the plaintiff was disabled, three questions generally must be analyzed: "(1) Is there an impairment? (2) does the impairment affect a major life activity? and (3) does this effect rise to a substantial limitation?" Barbara T. Lindemann et al., Employment Discrimination Law Vol. 1 822 C. Geoffrey Weirich ed., American Bar Association 2007. With regard to the question of whether there is an impairment, the ADA regulations define a physical impairment as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1). In this case, the court finds that plaintiff's Type 1 diabetes is clearly an impairment as defined under the ADA.

The court turns next to the question whether plaintiff's impairment affects a major life activity. The United States Supreme Court has held that a major life activity means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Sutton v. United Air Lines, Inc., 527 U.S. 471, 480 (1999) (quoting C.F.R. §1630.2(I)). The parties agree that Type 1 diabetes requires periodic insulin injections to keep a Type 1 diabetic patient's blood sugar levels within acceptable physiological limits and further acknowledge that failure to maintain a proper blood sugar level can result in a wide array of consequences ranging from altered mental states to organ damage to death. The court, therefore, finds that plaintiff's impairment does affect at least one major life activity.

The final component in deciding whether defendant is disabled within the meaning of the ADA is to ascertain whether plaintiff's impairments give rise to a substantial limitation of a major life activity. The court in Sutton also held that determining whether a person has an impairment that substantially limits a major life activity must be made on a case-by-case basis. 527 U.S. at 483. Moreover, in making this determination, the court held that all the circumstances surrounding an individual's health condition - including corrective medications or devices the plaintiff is utilizing - must be considered in determining the limitation on major life activities. *Id.* In other words, the proper focus is to look at the *effect* the impairment has on the individual, not the *diagnosis*.

In determining whether plaintiff's impairment results in a substantial limitation, plaintiff's own expert, Dr. Brandon Allard, an endocrinologist with Sanford Health, testified that even *without* any accommodation by the employer, a hypothetical diabetic employee similar to the plaintiff in the present action "should be able to maintain [his] diabetic control." (Allard Dep. 80). Here, however, defendants have made accommodations for plaintiff in the workplace. Defendants have relocated plaintiff to the Becker-Hansen building in order to give plaintiff more predictability and accessibility to his necessary insulin medication. Moreover, in the letter dated February 18, 2005, Dean told plaintiff that, when it comes to when plaintiff needs to work on projects, "unless there is an emergency, you can decide what to do when."

Thus, plaintiff's own expert testified that, even without accommodations, a hypothetical diabetic employee similar to the plaintiff with a work schedule and work load similar to plaintiff

should be able to maintain his diabetes management. Therefore, since plaintiff is likely unable to meet this element, he could not properly be classified as disabled under the ADA, and his claims would fail. However, even assuming, *arguendo*, that plaintiff is able to meet the definition of being disabled under the ADA, he must still prove that he was qualified to perform the essential functions of his job, and that he suffered an adverse employment action because of his disability.

Plaintiff bears the burden of establishing a *prima facie* case of discrimination.

A "minimal evidentiary showing satisfies a plaintiff's burden of production" at the *prima facie* stage of this case. Pope v. ESA Services, Inc., 406 F.3d 1001, 1007 (8th Cir. 2005). At this stage, the plaintiff's burden "is not onerous." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In considering a *prima facie* case for ADA claims, a "plaintiff must show only that he possesses the basic skills necessary for performance of the job," not that he was doing it satisfactorily. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2nd Cir. 2001) (alteration omitted) (quoted with approval in McGinnis v. Union Pacific Railroad, 496 F.3d 868, 874 (8th Cir. 2007). It would be error to apply a higher standard than required to establish a *prima facie* case. The four factors to establish a *prima facie* case are: (1) the employee is within the protected class or group, (2) was qualified to perform his job or, put in another fashion, was meeting the legitimate expectations of his employer, (3) suffered an adverse employment action, and (4) has circumstances which give rise to an inference of discrimination. Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994).

Plaintiff is clearly within the protected class and he suffered an adverse employment action. He was demoted, albeit he suffered no loss of income. As to whether plaintiff was qualified to perform his job, there is no doubt that he was *initially* qualified to perform his job. This then would provide a rebuttable presumption that discrimination has occurred.. As already explained, at the *prima facie* stage, the test is "not onerous." However, at the third stage (i.e. to prove pretext), the test becomes "rigorous." Williams, 14 F.3d at 1308.

Although it is more than highly questionable whether plaintiff has made out a prima facie case, I am assuming, for the purposes of this motion, that plaintiff has made out a *prima facie* case. We know that once a plaintiff has made out a *prima facie* case, the burden of production

7

shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer has shown a legitimate and nondiscriminatory reason for the adverse employment action, the burden of production then shifts back to the plaintiff to show that the reason or reasons proffered by the employer are pretexts for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

We know that plaintiff may defeat the summary judgment motion in one of two ways. First, he may present direct evidence of discrimination which means evidence showing a specific link between the alleged discriminatory animus, here the disability, and his demotion. The evidence must be sufficient to allow a reasonable fact finder to find that the discrimination actually motivated the demotion. In this case, could a jury reasonably conclude that plaintiff suffered any adverse employment action? The answer, of course, is "yes" since he was demoted. Is there direct evidence by which a jury could reasonably conclude that the actions of his employer were motivated by discrimination? The answer to the last question is clearly "no."

Lacking direct evidence of discrimination, plaintiff may still survive the summary judgment motion by creating an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas.

Courts do not act as super-personnel departments to review the wisdom or fairness of the employer's decision to terminate or demote an employee. Wittenburg v. Am. Express Fin. Advisors, Inc., 464 F.3d 831, 836 (8th Cir. 2006).

Defendants have clearly set forth a legitimate and nondiscriminatory explanation for their decision to demote plaintiff. With that showing having been made, plaintiff must show that the explanation is merely a pretext for discrimination.

There is no evidence that the proffered reason for the demotion was pretextual. "To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005). To put it another way, whether or not defendants were correct in their belief that the complaints being made against plaintiff were sufficient reasons to demote him is not the issue.

8

Defendants have focused their argument on the fact that plaintiff did not have the necessary skills to adequately perform the team leader position and, consequently, argue that they had a non-discriminatory purpose in removing plaintiff from the team leader position. Therefore, defendants do not address whether or not plaintiff was removed as team leader because he was not "qualified for the position" under the ADA.

It is undisputed that, when defendants hired plaintiff for the [team leader] position, they considered plaintiff at least minimally qualified for the position. Accordingly, plaintiff has provided sufficient evidence on which a rational trier of fact could conclude that plaintiff was a qualified individual within the meaning of the ADA." Davenport v. Idaho Dept. of Env. Quality, 469 F.Supp.2d 861, 877 (D.Idaho 2006).

Plaintiff is a diabetic and plaintiff's position as team leader was terminated. However, plaintiff offers no evidence that his removal from the team leader position was because of his diabetes. In other words, plaintiff offers no causal link between his demotion and his diabetes. To the contrary, plaintiff *admits* that he was removed from the position of team leader because of complaints made about him by other BIT employees. "My demotion . . . was done because of just one politically motivated complaint." (Doc. 48) Whether or not plaintiff's removal as a team leader was proper is only a concern for this court if there is some evidence that plaintiff's removal was based on his disability. There is nothing in the record that indicates plaintiff's removal was due to his disability and, therefore, plaintiff is unable to establish even the suggestion of pretext.

Plaintiff has not met his burden of proving that his impairment rises to the level of a substantial limitation on a major life activity. His own expert testified that, even in the absence of accommodations, a hypothetical employee of plaintiff's age and general health could adequately manage his diabetes without accommodations. Even in light of plaintiff's expert, however, defendants have provided plaintiff with accommodations, and as the Court of Appeals for the Eighth Circuit has held, "[a]n employer is not required to provide a disabled employee with an accommodation that is ideal from the employee's perspective, only an accommodation that is reasonable." Huber v. Wal-Mart Stores, Inc., 486 F.3d 480, 484 (8th Cir. 2007). Accommodations that are reasonable have been provided.

There are no genuine issues of material fact and a summary judgment should therefore be awarded against plaintiff and in favor of defendants.

### ORDER

Now, therefore,

IT IS ORDERED, as follows:

(1) Defendants' motion for summary judgment, Doc 43, is granted.

(2) Defendants' motion to dismiss, Doc. 43, is denied as moot.

(3) Plaintiff's motion for preliminary injunction, Doc 59, is denied.

(4) Plaintiff's motion to exclude, Doc 60, is denied.

(5) The telephonic hearing scheduled for December 29, 2008, is cancelled.

(6) No costs shall be taxed.

Dated this 15th day of December, 2008

BY THE COURT:

CHARLES B. KORNMANN
UNITED STATES DISTRICT JUDGE

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
                    DEPUTY
  (SEAL)